OPINION
{¶ 1} Defendant-appellant, Delmar J. Gagaris, appeals his conviction in Butler County Court of Common Pleas for possession of cocaine.
 {¶ 2} Appellant was charged with the felony drug offense after police, receiving information from an informant, stopped appellant's vehicle and found him in possession of cocaine. Appellant filed a motion to suppress evidence, which was denied by the trial court. Appellant's case was tried to the bench, and he was found guilty of the possession *Page 2 
charge. Appellant presents three assignments of error on this appeal of his conviction.
 {¶ 3} Appellant asserts under his first assignment of error that the trial court erred in denying his motion to suppress because the police stop of his vehicle and warrantless search of his person violated his constitutional rights, and any statements he made should be suppressed as fruits of the alleged illegal stop and search.
 {¶ 4} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402; State v. Forbes, Preble App. No. CA2007-01-001, 2007-Ohio-6412, ¶ 29. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Bryson; Forbes.
 {¶ 5} The following evidence was introduced at the suppression hearing. A Middletown Police officer testified that police established surveillance of a residence on Kensington after they received tips from a drug hotline that drug activity was occurring at this particular house. During the surveillance, a white Camaro registered to appellant was observed visiting the residence. A confidential informant known to the testifying officer for approximately eight years and who had previously provided reliable information, contacted the officer and told him that appellant was bringing drugs from Dayton, Ohio to the Kensington address. The informant provided a description of appellant, information about appellant's vehicle and license plate, and where appellant was staying in the area. Police indicated that they were able to verify the information the informant provided.
 {¶ 6} On the day of the arrest, the informant called police and told them that appellant was in his white Camaro en route to Kensington with three to four ounces of *Page 3 
cocaine. Through a series of calls, the informant told police that appellant was at the residence and that he was leaving. The informant indicated that appellant was observed with cocaine in a pouch shoved down the front of appellant's pants. The officer testified that police were "scrambling" to catch up with appellant, but were unable to mobilize before appellant left Kensington.
 {¶ 7} Police were subsequently directed to the area of a fast food restaurant where appellant had reportedly stopped. The officer testified that they decided to stop appellant's vehicle after the informant told police that appellant would still have cocaine on him, and "severe" weather was coming into the area.
 {¶ 8} The officer testified that as appellant pulled his vehicle to a stop, he was observed by two officers leaning or "reaching over" to his right. Appellant was ordered out of his vehicle. The officer conducting a pat-down of appellant noticed something in appellant's waistband and pulled out a pouch and handed it to the testifying officer. The officer testified that the pouch was approximately 12 inches long and six to eight inches wide and contained a metal clip "consistent with what I would carry in an undercover capacity as * * *on the back of a holster * * *." The officer said he unzipped the pouch and saw a "white powder substance which we believed to be cocaine at that time."
 {¶ 9} Appellant was transported to the police department, where he waived his[1] Miranda1 rights and told police that the cocaine was for his personal use, but also indicated that he was delivering the cocaine to someone else.
 {¶ 10} The trial court stated in its decision that police possessed reasonable, articulable suspicion that appellant was committing a crime when they stopped his vehicle, that the ensuing pat down of appellant for weapons was proper, and police had probable cause for the arrest once police discovered the pouch in appellant's waistband, *Page 4 
which verified *Page 5 
the informant's description of a pouch of cocaine placed down the front of appellant's pants.
 {¶ 11} A review of the evidence set forth in the suppression hearing indicates that, based upon the information provided by the informant and verified by police, officers had probable cause to arrest appellant for possession of drugs before they stopped his vehicle.
 {¶ 12} The warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. Maryland v. Pringle (2003), 540 U.S. 366, 370,124 S.Ct. 795; State v. Timson (1974), 38 Ohio St.2d 122, paragraph one of the syllabus; State v. Cranford, Montgomery App. No. 20633, 2005-Ohio-1904, ¶ 14
(in order for the warrantless arrest of defendant to be lawful, either defendant must have been in a public place or there must have been exigent circumstances justifying officer's entry into her residence).
 {¶ 13} Probable cause to arrest exists when the officer has sufficient information, derived from his own knowledge or a trustworthy source, which would lead a prudent person to believe the accused committed the offense. State v. Cearley, Butler App. No. CA2003-08-213,2004-Ohio-4837, ¶ 8. When determining whether probable cause to arrest exists, a court reviews the totality of facts and circumstances surrounding the arrest. Voelker at ¶ 10.
 {¶ 14} The Supreme Court has held that officers may rely on information provided by confidential informants to make warrantless arrests as long as that information is corroborated by other sources. See Illinois v. Gates (1983), 462 U.S. 213, 242, 103 S.Ct. 2317;Draper v. United States (1959), 358 U.S. 307, 79 S.Ct. 329 (information from a reliable informant provided physical description of man that informant said would arrive *Page 6 
in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin and that information was verified by police officer observing man matching description exiting train from Chicago); State v. Rampey, Stark App. No. 2004 CA 00102, 2006-Ohio-1383, ¶ 16.
 {¶ 15} The trial court also concluded that police were permitted to open and search the pouch as a search incident to the arrest. The trial court indicated that opening the pouch occurred "virtually contemporaneously" with the arrest.
 {¶ 16} One of the exceptions to the general prohibition against warrantless searches is a search incident to a lawful arrest. SeeChimel v. California (1969), 395 U.S. 752, 762-763, 89 S.Ct. 2034. When conducting a search incident to arrest, police are not limited to aTerry pat-down for weapons, but may conduct a full search of the arrestee's person for contraband or evidence of a crime. State v.Oglesby, Clinton App. No. CA2004-12-027, 2005-Ohio-6556, ¶ 21, 23; see, also, State v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483; see State v.Abrams, Clermont App. No. CA2007-03-040, 2008-Ohio-94, ¶ 11 (search may precede the arrest so long as the fruits of the search are not used to support probable cause for the arrest).
 {¶ 17} We have considered appellant's arguments and case citations related to this assignment of error and find them distinguishable and decline to accept them. We find no error in the trial court's decision to deny appellant's motion to suppress evidence. Appellant's first assignment of error is overruled.
 {¶ 18} Appellant argues under his second assignment of error that the trial court abused its discretion when it refused to compel the production of certain discovery.
 {¶ 19} Appellant sought to obtain a police report that reportedly contained a narrative from the officer who testified both at the suppression hearing and at trial. Appellant specifically asserts that the police report was discoverable and should have *Page 7 
been provided to him because the officer's credibility was at issue in both hearings.
 {¶ 20} A defendant is entitled to a Crim. R. 16(B)(1)(g) in camera inspection of a witness' prior written or recorded statement if it is requested after the direct examination of that witness, but before the completion of cross-examination. State v. Hale, 119 Ohio St.3d 118, 132,2008-Ohio-3426, ¶ 94 (Crim. R. 16[B][1][g] provides for the in camera inspection of a witness' written or recorded out-of-court statement to determine whether the statement is inconsistent with the witness' testimony, in which case it may be used in cross-examining the witness; under the rule, counsel for both parties must be given the opportunity to: [1] inspect the statement personally; and [2] call to the court's attention any perceived inconsistencies between the testimony of the witness and the prior statement).
 {¶ 21} Police reports may be considered statements in this context only where the document is the author's own observations and recollection of the events. State v. Schnipper (1986),22 Ohio St.3d 158, 159-160; State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, ¶ 43-50.
 {¶ 22} The record indicates that appellant did not ask the trial court to conduct an in camera inspection of the police report either at the suppression hearing or at trial. Appellant requested that he be permitted to see the reports and that the state turn them over to him.
 {¶ 23} The trial court denied appellant's request for the police report at the suppression hearing. At trial, appellant was provided the report after the officer's direct testimony. The trial court sustained the state's objection to appellant's request that the officer read the narrative out loud. Appellant did not ask the officer any further questions about the report.
 {¶ 24} It would have been appropriate for the trial court to conduct an in camera *Page 8 
review of the police report, along with the participation of both counsel. However, we have reviewed the record before us, including the police report proffered by appellant, and do not observe any inconsistencies in the report in relation to the officer's testimony before or during trial that would warrant reversal of appellant's conviction. Therefore, we find no prejudice to appellant by the trial court's decision. See Hale, 2008-Ohio-3426, ¶ 94-99; State v.Smith, 162 Ohio App.3d 123, 2005-Ohio-2152, ¶ 21. Appellant's second assignment of error is overruled.
 {¶ 25} In his third assignment of error, appellant challenges the trial court's decision to overrule his motion for acquittal because there was insufficient evidence within a reasonable degree of scientific certainty that the substance found on appellant was cocaine.
 {¶ 26} Our review of a court's denial of a motion for acquittal is governed by the same standard as that used for determining whether a verdict is supported by sufficient evidence. State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14. In reviewing a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 34.
 {¶ 27} The record indicates that the state's witness in question, a forensic chemist from the Miami Valley Regional Crime Laboratory, was not asked to give her opinion about the identity of the substance she tested within a reasonable degree of certainty or probability and she did not couch her answers in that manner. The chemist gave her qualifications and experience, indicated that she was previously qualified as an expert witness to testify in Ohio courts, and described the two specific tests she performed on the substance. The chemist testified that her testing indicated that cocaine was present *Page 9 
in the substance, that the weight was 111.98 grams, and cocaine is a schedule II controlled substance.[2]
 {¶ 28} We note that appellant did not object during the witness' direct testimony regarding the identification of the substance and never asked that the testimony be stricken.
 {¶ 29} The state's failure to more effectively present this witness' testimony to the trier of fact is vexing to this court. However, having reviewed the evidence in the record in a light most favorable to the state on appellant's challenge to the sufficiency of the evidence on the identification of the controlled substance, we find that any rational trier of fact could have found the identity of the substance proven beyond a reasonable doubt. See Evid. R. 702; cf. State v. Elam, Hancock App. No. 5-02-57, 2003-Ohio-1577, ¶ 6-12 (found requisite evidence to survive sufficiency challenge where scientist was not asked to testify that substance was crack cocaine to a reasonable degree of certainty, but was asked to render an opinion based upon his experience, qualifications, and testing involved, and another witness testified to identity of substance as a drug user).
 {¶ 30} Appellant's third assignment of error is overruled.
 {¶ 31} Judgment affirmed.
BRESSLER and YOUNG, JJ., concur.
[1] Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602.
[2] A police officer testified at trial that the substance found in the pouch removed from appellant's waistband was field tested by police, and the field test indicated that the substance was cocaine or a cocaine derivative. There was also testimony that appellant told police the cocaine was his and later indicated he was taking the cocaine to someone else. *Page 1